FILED

2009 AUG 31  PM 3: 39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

SEYFARTH SHAW LLP
Eric R. McDonough (State Bar No. 193956)
emcdonough@seyfarth.com
Carolyn E. Sieve (State Bar No. 182763)
csieve@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Daniel M. Blouin  (*pro hac vice application pending*)
dblouin@seyfarth.com
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone:  (312) 460-5966
Facsimile:  (312) 460-7966

SONNENSCHEIN NATH & ROSENTHAL LLP
Kendra Kekelis Hartman (*pro hac vice application pending*)
khartman@sonnenschein.com
233 South Wacker Drive, Suite 7800
Chicago, IL 60606
Telephone (312) 876-8000
Facsimile:  (312) 876-7934

Attorneys for Defendant
Allstate Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTREBERTO DE LA TORRE, an individual, on behalf of himself, the general public and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, a corporation; and DOES 1-100, inclusive, <br><br> Defendants. | Case No. CV09-6346  JSL (AGRx) <br><br> **DEFENDANT ALLSTATE INSURANCE COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT** <br><br> [CLASS ACTION FAIRNESS ACT OF 2005] <br><br> Complaint Filed: July 24, 2009 |

LA1 6898195.1

1    TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL
2  DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS
3  OF RECORD:
4        PLEASE TAKE NOTICE that Defendant Allstate Insurance Company
5  ("Defendant") files this Notice of Removal pursuant to 28 U.S.C. sections 1441
6  and 1446, asserting original federal jurisdiction under 28 U.S.C. sections
7  1332(d)(2) and 1453, to effect the removal of the above-captioned action, which
8  was originally commenced in the Superior Court of the State of California in and
9  for the County of Los Angeles, to the United States District Court for the Central
10  District of California.  This Court has original jurisdiction over the action pursuant
11  to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons:

12  **I.      BACKGROUND**
13        1.      On July 24, 2009, Austreberto De La Torre ("Plaintiff") filed a class
14  action complaint against Allstate Insurance Company and Does 1-100 in the
15  Superior Court of the State of California, County of Los Angeles, Case No.
16  BC418575 (the "State Court Action").  The complaint purports to assert causes of
17  action against Defendants for:  1) Breach of Contract; (2) Breach of the Implied
18  Covenant of Good Faith and Fair Dealing; (3) Declaratory Relief; (4) Violation of
19  the Unfair Competition Law; and (5) Unjust Enrichment.  Plaintiff seeks, on behalf
20  of himself and a putative class, injunctive relief, damages, punitive damages,
21  prejudgment interest, and attorney's fees.

22  **II.     DEFENDANT HAS SATISFIED ALL PROCEDURAL
23          REQUIREMENTS FOR REMOVAL**
24        2.      On July 30, 2009, Defendant was served with a copy of the summons
25  and complaint through personal service on its statutory agent for process.
26  McDonough Decl. ¶ 4.  This Notice of Removal is timely as it is filed within 30
27  days of service on Defendant of a copy of the initial summons and complaint in
28  this matter.  28 U.S.C. section 1446(b).

3.    Venue lies in the Central District of this Court pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(c).  This action originally was brought in the Superior Court of the State of California, County of Los Angeles.  Defendant is informed and believes that Plaintiff resides in Los Angeles County, California.

4.    As required by 28 U.S.C. § 1446(a), in addition to a copy of the State Court Action complaint, all other process, pleadings, motions, orders and other papers served upon Defendant in connection with the State Court Action, are attached hereto as Exhibit A.

5.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.

## III.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

### A.   This Case Is Subject To Removal Based On Federal Jurisdiction Under 28 U.S.C. § 1332(d).

6.    The Complaint in the State Court Action asserts claims over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) and may be removed pursuant to 28 U.S.C. §§ 1441, 1446 and 1453 and other provisions of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.) ("CAFA").

7.    As set forth below, this is a putative class action in which: (1) there are 100 or more members in the Plaintiff's proposed class; (2) at least some members of the proposed class have a different citizenship from some defendants; and (3) the claims of the individual class members and the matter in controversy exceeds the sum or value of $5,000,000 in the aggregate.  This Court thus has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

## 1.   Class Action Consisting of More Than 100 Members

8.   In the complaint, Plaintiff purports to represent a class of persons described as: "(1) All California residents; (2) Who were insured by Allstate Insurance Company Deluxe Homeowners Policy, policy form AP2; (3) Who submitted a claim to Allstate Insurance Company for loss of personal property; (4) Where Allstate estimated the cost to replace covered personal property based on prices from internet websites; (5) Who were paid an actual cash value claims payment by Allstate Insurance Company; and (6) Where the actual cash value claims payment issued by Allstate was calculated from a replacement cost price that did not include estimated shipping costs to be charged by the on-line vendor." (Complaint ¶ 31.)

9.   The proposed class in the Complaint is not limited to a specific period of time, but given that the Complaint asserts a claim for violation of the Unfair Competition Law, Business & Professions Code § 17200 et seq., which has a four-year limitations period, the time period at issue presumably commences on July 24, 2005.

10.   The putative class defined by the Complaint most likely includes more than 100 persons.

11.   To gauge the size of the putative class, Allstate estimates that it has settled approximately 33,743 personal property claims pursuant to Deluxe Homeowners Policy (form AP2) during the putative time period at issue.  (See Declaration of Kathy McArthur ("McArthur Decl.") at ¶ 5.)  For all of these claims, Allstate prepared a personal property damage estimate using "Contents Estimating System" software, the same software used to prepare the personal property damage estimate for the Plaintiff's claim.  (Id., ¶¶ 5, 7.)  These 33,743 personal property claims comprise the universe of potential class members.

12.   Plaintiff alleges that the "replacement cost estimates" that Allstate obtains from retail internet websites do not include shipping charges (Complaint ¶¶

21-23).  Allstate permitted its adjusters to evaluate the price of lost or damaged items using replacement prices from internet sources for the 33,743 potential class claims.  (McArthur Decl., ¶ 6.)  Therefore, the requirement that the aggregate number of class members of the proposed plaintiff class be greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(B) is readily satisfied here.

## 2.    Diversity of Citizenship

13.    The Complaint provides that named plaintiff, Austreberto De La Torre, is a resident of Los Angeles, California.  (Complaint ¶ 9.)  Accordingly, on information and belief, the Plaintiff is a citizen of the state of California for purposes of determining diversity.  28 U.S.C. § 1332(d)(2)(A).

14.    The Complaint alleges that the State Court Action is brought on behalf of California residents.  (Complaint ¶ 31.)

15.    Defendant is a corporation duly organized under the laws of the state of Illinois, with its principal place of business located in Northbrook, Illinois and thus is a citizen of the state of Illinois for purposes of determining diversity.  28 U.S.C. § 1332(d)(2)(A).

16.    Thus, at least one proposed class member and the defendant are diverse, as required by 28 U.S.C. § 1332(d)(2)(A).

## 3.    The Amount-In-Controversy Requirement Is Satisfied

17.    The claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any

1    doubts regarding the maintenance of interstate class actions in state or federal court
2    should be resolved in favor of federal jurisdiction.  S. Rep. No. 109-14, at 42 ("[I]f
3    a federal court is uncertain about whether 'all matters in controversy' in a
4    purported class action 'do not in the aggregate exceed the sum or value of
5    $5,000,000, the court should err in favor of exercising jurisdiction over the
6    case . . . .  Overall, new section 1332(d) is intended to expand substantially federal
7    court jurisdiction over class actions.  Its provisions should be read broadly, with a
8    strong preference that interstate class actions should be heard in a federal court if
9    properly removed by any defendant.")

10        18.    Plaintiff does not specify the amount of damages he is seeking.  When
11   the amount in controversy is not apparent from the face of the complaint, a
12   defendant may state underlying facts supporting its assertion that the amount in
13   controversy exceeds the jurisdictional threshold.  *Gaus v. Miles, Inc.*, 980 F.2d
14   564, 566 (9th Cir. 1992).

15        19.    Here, based upon Plaintiff's allegations and theories (which
16   Defendant disputes, but which control for removal purposes), the aggregate
17   amount in controversy for Plaintiff's proposed class of California policyholders
18   exceeds $5,000,000.  As addressed above, Defendant cannot ascertain the total
19   number of insureds who suffered the precise loss alleged by Plaintiff, but
20   Defendant estimates that approximately 33,743 claims comprise the universe of
21   potential class members.  If the entire universe of 33,743 potential claims suffered
22   the same alleged loss, the $5 million amount in controversy requirement would be
23   met if the average loss was only $148.17 per claim (before taking into account
24   punitive damages, attorneys' fees, and injunctive belief, which are addressed
25   below).

26        20.    Based on Plaintiff's theories, and by reference to the facts of
27   Plaintiff's claim (which is alleged to be "typical of the claims of the class" (Compl.
28   ¶ 41)), it is reasonable to estimate that the average loss could exceed $148.17 per

claim.   Plaintiff claims to be owed shipping charges for certain "large items" including a massage bed, sofa, television, DVD player, and vacuum cleaner. (*Id.* ¶ 22.)  As Plaintiff claims, shipping charges for these items "would have been significant," and it is reasonable to estimate that the cost to ship all of the identified items to Plaintiff could be at least $148.17.  As further evidence of the reasonableness of this amount, Defendant submits a copy of the standard shipping rates for Amazon.com.  A true and correct copy of the page printed off the Amazon.com website is attached to the Declaration of Eric McDonough as Exhibit C.  Under the Amazon.com shipping policy, shipping a bed, sofa, television and other large items, which undoubtedly would weigh hundreds of pounds in the aggregate, would cost at least $148.17 ($0.59 per pound for electronics and furniture, plus $4.99 per shipment).  Even if the average loss was considerably less than $148.17, the amount in controversy would still be satisfied by virtue of the punitive damages requested.

21.   In addition to actual damages, Plaintiff seeks punitive damages pursuant to his second cause of action for breach of the implied covenant of good faith and fair dealing. (Complaint ¶¶ 63, 64.)  Defendant does not concede that punitive damages would ever be appropriate under the circumstances of this case; nonetheless, where punitive damages are available under applicable law, they are considered in determining the amount in controversy. *Richmond v. Allstate Ins. Co.,* 897 F.Supp. 447, 450 (S.D.Cal.1995).  Under California law, punitive damages are recoverable against an insurance company that breaches the implied covenant of good faith and fair dealing. *Id.*

22.   From the allegations in the Complaint, punitive damages could be a substantial figure for each purported class member. *See also, e.g., Neal v. Farmers Insurance Exchange,* 21 Cal.3d 910, 922-23, 148 Cal.Rptr. 389 (1978) (approving an award of punitive damages in the amount of $740,000 where compensatory damages were $9,573.65); *Downey Savings & Loan Association v. Ohio Casualty*

1   *Insurance Company*, 189 Cal.App.3d 1072, 1099, 234 Cal.Rptr. 835 (1987)

2   (upholding punitive damages equal to 32 times the award of compensatory

3   damages), *cert. denied*, 486 U.S. 1036, 108 S.Ct. 2023, 100 L.Ed.2d 610 (1988).

4   In cases where plaintiffs have alleged that the insurance company has failed to

5   make full actual cash value payments, juries have awarded significant punitive

6   damages. *See, e.g., Farmland Mutual Ins. Co. v. Johnson*, 36 S.W.3d 368, 383

7   (Ky. 2001) ($2,000,000 punitive damages award upheld in action involving bad

8   faith interpretation of "actual cash value" in fire insurance policy).

9       23.   Plaintiff also seeks attorneys' fees pursuant to California Civil

10   Procedure Code section 1021.5. (Complaint Prayer for Relief ¶ 7.) Where

11   statutory authority provides for attorneys' fees, the fees are included in the amount

12   in controversy to reach CAFA's $5,000,000 minimum. *Guglielmino v. McKee*

13   *Foods Corp.*, 506 F.3d 696, 700 (9th Cir.2007) (finding that Section 1332(a)'s

14   amount-in-controversy requirement included attorneys' fees, where attorneys' fees

15   were claimed, among others, under Section 1021.5). A fair estimate of potential

16   attorneys' fees in this action is 25% of compensatory damages. *See, e.g., Molnar*

17   *v. 1-800-Flowers.com, Inc.*, No. CV 08-0542 CAS (JCx), 2009 WL 481618, at *4-

18   *5 (C.D. Cal. Feb. 23, 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th

19   Cir.2003) ("This circuit has established 25% of the common fund as a benchmark

20   award for attorney fees.")).[1]

21       24.   Plaintiff also seeks a permanent injunction "mandating that Allstate

22   revise its interpretation of its residential insurance policies which cover property

23   located in the State of California." (Complaint ¶ 76; Prayer for Relief 2.) The

24   Complaint does not specify exactly what type of injunctive relief Plaintiff seeks,

25   but alleges that Defendant's current business practice is to "fail[] to make personal

26   property claims payments which include estimate shipping charges when the

27

[1] Assuming that attorneys' fees for each claim would be 25% of compensatory

28   damages, the $5 million amount in controversy requirement would be met if each

    potential class member had economic damages of $111.

estimate for the personal property loss was calculated based upon internet based websites which charge shipping charges for delivery of items." (Complaint ¶ 81.) Plaintiff contends that shipping charge payments should be included with the actual cash value claims payments. (Complaint ¶ 54.)

25.     The amount in controversy includes the costs a defendant incurs in complying with injunctive relief. *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004); *The Home Depot, Inc. v. Rickher*, 2006 U.S. App. LEXIS 32391, *4 (7th Cir. 2006).

26.     It is impossible to ascertain the potential cost to Defendant of complying with the requested injunctive relief under the allegations. Costs to implement an entirely new business procedure and/or to modify existing business practices and procedures and to implement new or additional training or disclosures potentially could be substantial.

27.     The total amount in controversy, as framed by the Plaintiff's Complaint, inclusive of potential actual damages, punitive damages, costs of injunctive relief, and attorneys fees, satisfies the $5,000,000 jurisdictional requirement.

28.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

///
///
///
///
///
///
///

LA1 6898195 1

1       WHEREFORE, Defendant prays that the above action now pending before

2   the Superior Court of the State of California for the County of Los Angeles be

3   removed to this Court.

4   DATED:  August 31, 2009

5                                 SEYFARTH SHAW LLP

6

7   By_____
                  Eric R. McDonough

8                  Attorneys for Defendant

9                  Allstate Insurance Company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAI 6898195.1

NOTICE OF REMOVAL.

# Exhibit A

1  David C. Parisi, Esq. (162248)
   Suzanne Havens Beckman, Esq. (188814)
2  PARISI & HAVENS LLP
   15233 Valleyheart Drive
3  Sherman Oaks, California  91403
   (818) 990-1299 (phone)
4  (818) 501-7852 (facsimile)
   dcparisi@parisihavens.com
5  shavens@parisihavens.com

6
   Alan Himmelfarb, Esq. (90840)
7  KAMBEREDELSON, LLC
   2757 Leonis Blvd.
8  Los Angeles, California  90058
   (823) 585-8696 (phone)
9  ahimmelfarb@kamberedelson.com

10
   Attorneys for plaintiff Austreberto De La Torre, on
11 behalf of himself, the general public and all others
   similarly situated
12

13        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14             **FOR THE COUNTY OF LOS ANGELES**

15 AUSTREBERTO DE LA TORRE, an        )   CASE NO.:   **BC418575**
   individual, on behalf of himself, the general )
16 public and all others similarly situated,     )
                                          )   **CLASS ACTION COMPLAINT FOR:**
17                                        )
             Plaintiff,                   )   (1) Breach of Contract;
18                                        )   (2) Breach of the Implied Covenant of
   v.                                     )       Good Faith and Fair Dealing;
19                                        )   (3) Declaratory Relief;
   ALLSTATE INSURANCE COMPANY, a         )   (4) Violation of the Unfair Competition
20 corporation; and DOES 1-100, inclusive, )       Law; and
                                          )   (5) Unjust Enrichment.
21           Defendants,                  )
                                          )
22 ──────────────────────────────────── )

23

24

25

26

27

28

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 24 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
   RUGENA LOPEZ

Plaintiff Austreberto De La Torre ("plaintiff"), on behalf of himself, the general public and all others similarly situated against Allstate Insurance Company, and Does 1 through 100, inclusive, (collectively "Allstate"), alleges as follows:

## NATURE OF THE ACTION

1.     Individual consumers pay thousands of dollars annually to their insurance companies in order to obtain peace of mind, security, and coverage for their property in the event of a loss.  The terms and conditions of coverage are spelled out in the insurance policy, and the amount consumers end up paying for this insurance coverage is dependant in large part upon the extent of coverage that the insurance company agrees to be financially responsible for in the event of a loss.

2.     One of the most common provisions of homeowners personal property coverage is a promise by the insurance company to pay to replace damaged or lost property at its "replacement cost," less the value of any depreciation.  This initial payment of replacement cost less depreciation is often referred to as the "actual cash value" payment.  Replacement cost includes any taxes that must be paid to obtain the property, as well as any other costs that may be necessary to obtain the property.  Once the policyholder replaces the item, they are entitled to the value of the withheld depreciation.

3.     These concepts of actual cash value and replacement cost value are not only commonly accepted measures of an insurance company's obligations where covered damage or loss occurs, they are also clearly understood by Allstate and are written in the Allstate standard form policies.

4.     Despite the insurer's clear obligations to provide the replacement cost in the event of a loss, Allstate Insurance Company has decided to play games with its policyholders at the time when they are most in need of the services for which they have assiduously paid over the years.

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks CA 91403
(818) 990-1299

5.     When Allstate's policyholders suffer a personal property loss, Allstate completely redefines the term "replacement cost value" to mean not what the policyholder would have to pay to replace the item, but simply the lowest price the item is listed for on the internet, without considering shipping charges in the cost to replace the item.

6.     Retail internet websites, sometimes from overseas, sell items such as televisions, DVD players, and even beds at reduced prices because they have a lower overhead than traditional "brick and mortar" retailers, but then charge a separate amount for shipping charges. Allstate knows that shipping charges are an important component of the pricing of personal property purchased from retail internet websites and it takes advantage of this fact. Its failure to include shipping charges in the calculation of replacement cost is clearly a gross distortion of insurance law, if not an outright fraud on its policyholders, aimed at deliberately underpaying claims.. Plaintiff fell victim to this misconduct

## VENUE AND JURISDICTION

7.     This court may exercise jurisdiction over this case and these parties under Code of Civil Procedure § 410.10. This is a court of general jurisdiction, and the amount in controversy exceeds this court's jurisdictional minimum. Plaintiff is a California resident. The misconduct alleged took place primarily in Los Angeles County. Venue is proper under Code of Civil Procedure §§ 393 and 395.5. Venue is proper in this County pursuant to Code of Civil Procedure § 395.5 because Allstate conducts substantial business within this County.

8.     All allegations in this complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## THE PARTIES

9.     Plaintiff Austreberto De La Torre is, and at all relevant times mentioned herein was, an individual residing within the County of Los Angeles, State of California.

Mr. Austreberto brings this action on behalf of himself, the general public and all others similarly situated.

10. Defendant Allstate Insurance Company, an Illinois corporation, was and is an insurance company with its principal place of business located in the State of Illinois, and transacts the business of insurance in the State of California, and was and is now transacting insurance business in the State of California, County of Los Angeles.

11. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by plaintiff.

12. Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

13. All defendants, including Does 1 through 100, are collectively referred to as "defendants" or "Allstate."

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

14.   Whenever this complaint makes reference to any act of defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

## FACTUAL ALLEGATIONS

**Plaintiff was Insured by Allstate and Suffered a Covered Loss**

15.   Plaintiff owns a home located in Pasadena, California.

16.   Plaintiff purchased a standard form insurance policy from Allstate which provided coverage at all times relevant to the events described in this complaint, including on January 4, 2009. The policy was described as a Deluxe Homeowners Policy and identified as policy number 9 14 691447 02/21. The policy consisted of various forms, including the one relevant to this lawsuit, the Allstate Insurance Company Deluxe Homeowners Policy, policy form AP2. (A true and correct copy of this policy form is attached hereto as Exhibit 1 and incorporated by this reference.) The limits of liability for personal property protection under the policy was $106,314.00.

17.   On or about January 4, 2009, Plaintiff suffered a covered fire loss to his home in Pasadena, California. In addition to severe damage to his house, many of the contents in Plaintiff's home were irreparably damaged.

**The Adjustment of Plaintiff's Personal Property Loss**

18.   Plaintiff timely and properly submitted a claim to Allstate for damage to his personal property which was destroyed and/or damaged in the fire.

19.   Allstate agreed that plaintiff's personal property was damaged and/or destroyed in the fire and that it was obligated under the policy to pay to repair and replace the property.

20.   Allstate represented to Plaintiff that the full replacement cost of his personal property loss was $8,039.68. After deducting depreciation of $4,143.24 and adding $600.00

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

1   to clean certain items, Allstate paid plaintiff $4,496.44, which amount Allstate represented

2   was the actual cash value of plaintiff's loss.  (The Allstate estimate is attached hereto as

3   Exhibit 2 and incorporated by this reference.)

4       21.  However, for certain items of loss, Allstate paid plaintiff the actual cash value

5   based upon the price to purchase the item from a retail internet website.  In the "comments"

6   to the estimate, Allstate admitted that its payments for these online prices did not include

7   shipping charges:

8

9       This estimate may include items with pricing from internet sources.  In some cases shipping charges may not be known until a purchase is made.  If you replace the damaged, destroyed

10   or stolen property from one of these sources and shipping charges are incurred, you may make a claim for these additional

11   charges.  Should this occur, please contact your claim adjuster at the number listed above and submit a receipt for the shipping

12   charges.

13

14       22.  For instance, Allstate obtained the replacement cost estimate for a Sony

15   television from Amazon.com in the United Kingdom and for a Sony DVD player from

16   Amazon.com in the United States, but neither estimate, nor the eventual payment to

17   plaintiff, included shipping charges.  These items, as well as a massage bed, sofa and

18   vacuum cleaner, all of which Allstate priced based from retail internet websites, were large

19   items for which the shipping charges would have been significant.

20       23.  By failing to pay for shipping charges after obtaining prices from low cost

21   internet websites, Allstate underpaid plaintiff's claim in violation of the insurance policy.

22   **The Allstate Policy**

23       24.  The Allstate policy included a loss settlement clause which (1) does not state

24   that Allstate may deduct shipping charges from the replacement cost value of a loss and (2)

25   does not allow Allstate to withhold shipping charges from the actual cash value of the loss.

26   The loss settlement clause in the policy clearly requires Allstate to pay the full replacement

27

28   cost value of the loss and only allows for a deduction of depreciation:

5.   **How We Pay For A Loss**
Under **Coverage A – Dwelling Protection, Coverage B – Other Structures Protection and Coverage C – Personal Property Protection**, payment for covered loss will be by one or more of the following methods:

. . . .

b)   Actual Cash Value.  If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis.  This means there may be a deduction for depreciation.  Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

You may make claim for additional payment as described in paragraph "c" and paragraph "d", if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

. . . .

d)   Personal Property Reimbursement.  Under **Coverage C – Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1)   the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2)   the cost of repair or restoration; or
3)   the limit of liability shown on the Policy Declarations for **Coverage C – Personal Property Protection**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.
(Exhibit 1, pp. 15-17. emphasis in original.)

**Allstate Fails to Properly Interpret its Policy**

25.   Allstate has a pattern and practice of maximizing its own profits at the expense of its insureds like plaintiff. Allstate refuses to pay personal property claims

pursuant to the terms of the Allstate policy.  The Allstate policy does not permit Allstate to pay the lowest estimated cost to replace an item of personal property which is obtained from an internet website, and then fail to pay the estimated cost to ship the item to the insured.

26.   The Allstate policy also does not permit Allstate to withhold the cost of shipping charges from the replacement cost or actual cash value of an item until the insured incurs the cost of shipping.

27.   Allstate clearly understands that it is obligated to make it's insureds whole in the event of a personal property loss.  Allstate pays insureds the estimated material tax, prior to incurring that tax, that will be incurred the insured when they replace their personal property.  There is no rational distinction between the payment of estimated material tax and the payment of estimated shipping charges.

28.   Allstate's conduct deprived plaintiff of the full benefits to which he was entitled pursuant to the terms of the Allstate policy.

29.   When adjusting plaintiff's claim, Allstate knowingly diverted from the policy language and, without justification, deliberately chose not to pay for shipping charges at time of adjustment.

30.   By using these unfair or deceptive acts or practices, Allstate unilaterally reduced its coverage obligations under its insurance policies to the continuing detriment of plaintiff and the class members.

## CLASS ACTION ALLEGATIONS

31.   Plaintiff seeks relief for himself and all other similarly situated persons. Plaintiff will ask the court to certify the following class under Code of Civil Procedure § 382:

(1) All California residents;

(2) Who were insured by Allstate Insurance Company Deluxe Homeowners Policy, policy form AP2;

(3) Who submitted a claim to Allstate Insurance Company for loss of personal property;

(4) Where Allstate estimated the cost to replace covered personal property based on prices from internet websites;

(5) Who were paid an actual cash value claims payment by Allstate Insurance Company; and

(6) Where the actual cash value claims payment issued by Allstate was calculated from a replacement cost price that did not include estimated shipping costs to be charged by the on-line vendor.

32.   Excluded from the class are defendants, any entity in which defendants have a controlling interest or which has a controlling interest in defendants, and defendants' legal representatives, predecessors, successors, assigns, and employees.  Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

33.   Plaintiff reserves the right to revise the class definition based on facts learned during discovery.

34.   Plaintiff is a member of the class that he seeks to represent.  The members of the proposed class can be identified using information that is kept by defendants in the usual course of business and/or is in defendants' control.

35.   The class members can be notified of the class action through direct mailings to address lists maintained in the usual course of defendants' business.

36.   Plaintiff does not know the exact number of class members, because such information is in Allstate's exclusive control.  Plaintiff believes that the class members are sufficiently numerous such that their individual joinder is impracticable.

37. The common legal and factual questions for the class, which do not vary from class member to class member and which may be determined without reference to individual circumstances of any class member, include, but are not limited to, the following:

(a)     Whether Allstate has a policy of failing to include estimated shipping charges in its calculation of the replacement cost and/or the actual cash value of damaged personal property;

(b)     Whether Allstate's failure to include estimated shipping charges in claims payments is a violation of the Allstate Deluxe Homeowners policy;

(c)     Whether Allstate is obligated to include estimated shipping charges in its actual cash value personal property claims payments;

(d)     Whether Allstate is obligated to include estimated shipping charges in its replacement cost value personal property claims payments;

(e)     Whether Allstate's failure to include the estimated shipping charges in its calculation of replacement cost and the subsequent actual cash value claims payments is unfair under the UCL;

(f)     Whether plaintiff and the class are entitled to recover damages and the measure of such damages; and

(g)     Whether plaintiff and the class members are entitled to injunctive and equitable relief.

38. These common questions predominate over any individual questions that class members may have.

39. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the class members. Similar or identical breach of statutory

1   and common law violations, deceptive business practices, and misconduct are involved.

2   Individual questions, if any, pale by comparison to the numerous common questions that

3   dominate.

4       40.  The injuries sustained by the class members flow, in each instance, from a

5   common nucleus of operative facts.

6       41.  Plaintiff's claims are typical of the claims of the proposed class members.

7       42.  Plaintiff will fairly and adequately protect the interests of the class members.

8   Plaintiff's claims are the same as, and not in conflict with, the other class members.

9   Plaintiff is familiar with the facts that form the basis of the class members' claims.

10      43.  Plaintiff has retained counsel competent and experienced in class action

11  litigation and intends to prosecute this action vigorously.  Plaintiff's counsel has

12  successfully prosecuted complex actions, including class actions.  Plaintiff and his counsel

13  will fairly and adequately protect the interests of the class members.

14      44.  A class action is superior to other available means for the fair and efficient

15  adjudication of this controversy, because individual litigation of the class members' claims

16  is economically unfeasible and procedurally impracticable.  While the aggregate damages

17  sustained by the class members is likely significant, the individual damages incurred by

18  each class member are too small to warrant the expense of individual suits.  As such, it

19  would be virtually impossible for the class members to seek redress on an individual basis.

20  Even if the class members themselves could afford such individual litigation, the court

21  system could not.

22      45.  Individual litigation of the legal and factual issues raised by Allstate's

23  misconduct would increase delay and expense to all parties and to the court system.

24  Prosecution of separate actions would create the risk of inconsistent, varying or

25  contradictory adjudications, and would magnify the delay expense to all parties and the

26  court system resulting from multiple trials of the same issues.  A class action provides the

1  benefit of a single, uniform adjudication, economies of scale, and comprehensive

2  supervision by a single court.

3      46.  Given the similar nature of the class members' claims and the absence of

4  material differences in the state statutes and common laws upon which the class members'

5  claims are based, the classes can be easily managed by the Court and the parties.

6      47.  If appropriate, plaintiff may ask the Court to incorporate subclasses of

7  plaintiffs, defendants, or both, in the interest of justice and judicial economy.

8      48.  Plaintiff brings this action as a private attorney general, and to vindicate and

9  enforce an important right affecting the public interest. Plaintiff is therefore entitled to an

10  award of attorneys' fees under Code of Civil Procedure §1021.5 for bringing this action.

11  **INJUNCTIVE RELIEF IS NECESSARY TO ENJOIN DEFENDANTS' CONDUCT
   AND TO PREVENT FURTHER HARM TO PLAINTIFF AND CLASS MEMBERS**

13      49.  Based on information and belief, Allstate continues to engage in the improper

14  practices discussed above.

15      50.  Absent injunctive relief, the class members are likely to suffer irreparable

17  injury for which they have no adequate remedy at law.

18                          **FIRST CAUSE OF ACTION**

19                              (Breach of Contract)
                (By plaintiff on behalf of all class members against all defendants)

21      51.  Plaintiff hereby incorporates by reference the allegations contained in all

22  preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and

23  the class members.

24      52.  Plaintiff and the class members paid consideration in the form of premiums,

25  and have faithfully performed all obligations required to be performed by them under the

26  terms of the contracts, except to the extent their performance may have been excused by,

27  among other things, Allstate's bad faith conduct and breach of the Allstate policies.

53. Plaintiff and the class members were insured under valid Allstate policies in effect on the date the losses occurred.

54. Allstate breached the terms of the contracts by failing to pay monies due under the contracts by failing to include estimated shipping charges in the calculation of the replacement cost of items and the subsequent actual cash value claims payments.

55. As a direct, proximate and legal result of Allstate's breach(es) of the contracts, plaintiff and the class members have been, and continue to be, damaged in an amount in excess of the minimum jurisdictional limits of this Court, including but not limited to: the loss of benefits due under the contracts, interest on monies, and other fees, expenses and costs to be proven at trial.

## SECOND CAUSE OF ACTION

(Breach of the Implied Covenant of Good Faith and Fair Dealing)
(By plaintiff on behalf of all class members against all defendants)

56. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the class members.

57. The Allstate policies identified in this action contained an implied covenant of good faith and fair dealing whereby Allstate agreed to perform its obligations under the policies in good faith, to deal fairly with plaintiff and the class members, and not to unreasonably deprive plaintiff and the class members of the benefits due under the insurance policies.

58. Allstate breached its duty of good faith and fair dealing owed to plaintiff and the class members in at least the following respects:

   a.   Systematically, unreasonably, knowingly, willfully, unlawfully and in bad faith withholding amounts for estimated shipping charges for personal property loss estimates;

b.   Misrepresenting and concealing material facts and/or insurance policy provisions; and

c.   Compelling plaintiff to institute litigation to recover amounts due under insurance policies by offering substantially less than the amounts owed under the policies.

59.   Without any reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Allstate has failed and refused to act in good faith or act fairly toward plaintiff and the class members, and Allstate has, in bad faith, failed and refused to perform its obligations under the Allstate policies, and under the laws of the State of California.

60.   As a direct, proximate and legal result of said breaches of the covenant of good faith and fair dealing by Allstate, plaintiff and the class members have been, and continue to be, damaged in an amount according to proof, and plaintiff and the plaintiff class have been required to expend attorneys' fees and costs in pursuing relief to which they are entitled as a matter of law. Pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, plaintiff and the class members are entitled to attorneys' fees and costs reasonably incurred to compel the payment of benefits due under the Allstate policies.

61.   As a further direct, proximate, and legal result of the wrongful conduct of Allstate, plaintiff and the class members have also sustained other economic damages, as set forth in preceding paragraphs, and other damages in an amount to be proven at trial.

62.   Plaintiff waives his right to recover damages for emotional distress, and he will not seek class treatment for such damages. Plaintiff will, however, seek class treatment for the punitive damage claim as well as the *Brandt* fee claim.

63.   On the basis of all of the facts alleged herein above, Allstate's conduct and actions were despicable, and were done maliciously, oppressively and fraudulently, with the intent to deprive plaintiff and the class members of insurance benefits, and to cause injury to

1 plaintiff and the class members, and with a willful and conscious disregard of the rights of

2 plaintiff and the class members, thereby subjecting plaintiffs to unjust hardship and distress.

3 As to Allstate, the officers, directors and managing agents were personally involved in the

4 decision-making process with respect to the pattern of illegally deducting and withholding

5 estimated shipping charges from policy benefits due under the Allstate policies and other

6 conduct alleged herein, and to be proven at trial.

7

8      64. As to the conduct alleged herein to have been engaged in by representatives

9 of Allstate, the officers, directors and managing agents authorized and ratified each and

10 every act on which plaintiff and the class members allegations of punitive damages herein

11 are based. On that basis, pursuant to Civil Code §3294, plaintiff and the class members are

12 entitled to an award of exemplary and punitive damages in an amount adequate to make an

13 example of, and to punish and deter, Allstate.

14      **THIRD CAUSE OF ACTION**

15      (Declaratory Relief)

16      (By plaintiff on behalf of all class members against all defendants)

17      65. Plaintiff hereby incorporates by reference the allegations contained in all

18 preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and

19 the class members.

20      66. Allstate has failed and/refused to provide personal property benefits to

21 plaintiff and the class members as described above.

22      67. An actual controversy exists between Allstate on the one hand and plaintiff

23 and the class members on the other hand. Plaintiff and the class members are entitled to

24 immediate payment of all personal property claims payments under the terms of the policies

25 and Allstate contends that estimated shipping charges are not owed until incurred by the

26 insureds.

27

28

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

68.   Accordingly, plaintiff seeks a judicial declaration of entitlement to the estimated shipping charges when personal property claims estimates are based in part on estimated replacement of personal property from internet based companies which charge shipping in order to purchase an item.

## FOURTH CAUSE OF ACTION

(Violation of the Unfair Competition Law)
(By plaintiff on behalf of all class members against all defendants)

69.   Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.  Plaintiff asserts this claim on behalf of himself and the class members.

70.   Business & Professions Code §§ 17200, et. seq. prohibit any unfair competition, including any unlawful, unfair or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising and, any other act prohibited by Business & Professions Code §§ 17500, et. seq.

71.   Business & Professions Code §17500 provides that it is unlawful for any person, firm, corporation, or association, or any employee thereof to intentionally directly, or indirectly perform services, professional or otherwise, or to induce the public to enter into any obligation relating thereto, to make or disseminate in any manner any statement which is untrue or misleading, or which, by the exercise of reasonable care should be known to be untrue or misleading.

72.   The conduct of Allstate, as set forth in the causes of action in this complaint, constituted unfair business practices, as defined by the above-referenced statutes.

73.   Plaintiff and the class members are informed and believe and thereon allege that Allstate has adopted and engaged in the business practices described above.

74.   Plaintiff and the class members are informed and believe and on that basis allege that the unlawful practices alleged above are continuing in nature and are widespread practices engaged in by Allstate.

75.   Plaintiff requests that an injunction against Allstate, and each of them, issue to enjoin them from continuing to engage in the unlawful conduct alleged herein.

76.   Plaintiff requests that an injunction issue mandating that Allstate revise its interpretation of its residential insurance policies which cover property located in the State of California so that its interpretation conform to California law.

77.   Plaintiff requests that the court order any other and further equitable relief deemed necessary by the court including, without limitation, an order or judgment restoring to every person in interest money or property which may have been acquired by defendants by means of such unfair, unlawful, or fraudulent business practices.

78.   On behalf of the general public, plaintiff requests that this court order that Allstate be required to disgorge the profits wrongfully obtained through the use of these practices.

79.   Plaintiff respectfully requests that an award of attorneys fees upon prevailing in the request for injunctive, equitable and/or restitutionary relief pursuant to Code of Civil Procedure section 1021.5 and Business and Professions Code section 17203.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)
(By plaintiff on behalf of all class members against all defendants)

80.   Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.  Plaintiff asserts this claim on behalf of himself and the class members.

81.   A benefit has been conferred upon Allstate by plaintiff and the class members.  Allstate has received and retains money belonging to plaintiff and the class

members resulting from its practice of failing to make personal property claims payments which include estimate shipping charges when the estimate for the personal property loss was calculated based upon internet based websites which charge shipping charges for delivery of items.

82. Allstate appreciates or has knowledge of said benefit.

83. Under principles of equity and good conscience, Allstate should not be permitted to retain the money belonging to plaintiff and the class members, which it has unjustly received as a result of its actions.

84. Plaintiff and the class members have suffered loss as a direct result of Allstate's conduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and the class members, prays for relief as follows:

1. Certification of the a class for treatment pursuant to Code of Civil Procedure §382, with plaintiff Austreberto De La Torre designated as the class representative for the class, and with plaintiff's counsel designated as counsel for the class;

2. An order permanently enjoining Allstate, its agents, representatives, and employees from engaging in the business practices alleged herein;

3. An order awarding damages to plaintiff and class members;

4. For general, special and consequential damages according to proof;

5. For punitive and exemplary damages;

6. For prejudgment interest as provided by law;

7. For an award of reasonable attorney's fees and costs incurred in the investigation, filing, and prosecution of this action as permitted by law, including, but not limited to Code of Civil Procedure § 1021.5; and

8. For such other and further relief as the Court deems just and proper.

1  DATED: July 24, 2009

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARISI & HAVENS LLP

KAMBEREDELSON, LLC

By:
David C. Parisi
Attorneys for plaintiff Austreberto De La
Torre, on behalf of himself, the general
public and all others similarly situated

Class Action Complaint

PARISI & HAVENS LLP
15233 Ventura Boulevard Drive
Sherman Oaks, CA 91403
(818) 990-1299

# DEMAND FOR JURY TRIAL

Plaintiff and the class members hereby demand a trial by jury of all claims and causes of action in this lawsuit.

DATED: July 24, 2009

PARISI & HAVENS LLP

KAMBEREDELSON, LLC

By:
David C. Parisi
Attorneys for plaintiff Austreberto De La Torre, on behalf of himself, the general public and all others similarly situated

# Exhibit 1

# Allstate Insurance Company Deluxe Homeowners Policy

**CALIFORNIA**

Policy: 9 14 606458 12/20

Effective: December 20, 2004

Issued to:
Austreberto De La Torre
539 E Orange Grove Blvd
Pasadena CA 91104-4352

By your Allstate agent:
Pomes Ins Serv Inc
9087 E Las Tunas
Temple City CA 91780



Allstate Insurance Company
The Company Named in the Policy Declarations
A Stock Company—Home Office: Northbrook, Illinois 60062

PROP *818000404(2215/000%00309*

AP2

## Table of Contents

### General

Definitions Used In This Policy.................................. 2
Insuring Agreement...................................................... 3
Agreements We Make With You .................................. 4
Conformity To State Statutes ...................................... 4
Coverage Changes ....................................................... 4
Policy Transfer.............................................................. 4
Continued Coverage After Your Death ..................... 4
Cancellation.................................................................. 4
Concealment Or Fraud ................................................ 5

### Section I— Your Property
### Coverage A

**Dwelling Protection**
Property We Cover Under Coverage A ...................... 5
Property We Do Not Cover Under Coverage A ....... 5

### Coverage B
**Other Structures Protection**
Property We Cover Under Coverage B ...................... 5
Property We Do Not Cover Under Coverage B ....... 5
Losses We Cover Under Coverages A and B............ 5
Losses We Do Not Cover Under
    Coverages A and B ................................................ 6

### Coverage C
**Personal Property Protection**
Property We Cover Under Coverage C ...................... 8
Limitations On Certain Personal Property ............... 8
Property We Do Not Cover Under Coverage C....... 9
Losses We Cover Under Coverage C.......................... 9
Losses We Do Not Cover Under Coverage C......... 10

### Additional Protection
Additional Living Expense........................................ 12
Credit Card, Bank Fund Transfer Card,
    Check Forgery and Counterfeit Money ............. 12
Debris Removal............................................................ 13
Emergency Removal Of Property ............................ 13
Fire Department Charges .......................................... 13
Temporary Repairs After A Loss ............................ 13
Trees, Shrubs, Plants and Lawns ............................ 13
Temperature Change.................................................. 13
Power Interruption...................................................... 13
Arson reward................................................................ 14
Collapse........................................................................ 14
Land .............................................................................. 14

### Section I Conditions
Deductible..................................................................... 14
Insurable Interest and Our Liability ....................... 14
What You Must Do After A Loss .............................. 14
Our Settlement Options ............................................ 15
How We Pay For A Loss ............................................ 15
Our Settlement Of Loss ............................................ 17
Appraisal....................................................................... 17
Abandoned Property................................................... 17
Permission Granted To You...................................... 17
Our Rights To Recover Payment.............................. 17
Our Rights To Obtain Salvage.................................. 17
Suit Against Us ............................................................ 18
Loss To A Pair Or Set................................................ 18
Glass Replacement...................................................... 18
No Benefit To Bailee .................................................. 18
Other Insurance .......................................................... 18
Property Insurance Adjustment .............................. 18
Mortgagee ..................................................................... 18

### Section II— Family Liability and
### Guest Medical Protection

### Coverage X
**Family Liability Protection**
Losses We Cover Under Coverage X ....................... 19
Losses We Do Not Cover Under Coverage X ........ 19

### Coverage Y
**Guest Medical Protection**
Losses We Cover Under Coverage Y ....................... 21
Losses We Do Not Cover Under Coverage Y ........ 21

### Additional Protection
Claim Expenses............................................................ 22
Emergency First Aid .................................................. 23
Damage To Property Of Others .............................. 23

### Section II Conditions
What You Must Do After An Accidental Loss....... 23
What An Injured Person Must Do—Coverage Y
    Guest Medical Protection.................................... 23
Our Payment of Loss—Coverage Y
    Guest Medical Protection.................................... 23
Our Limits Of liability ............................................... 23
Bankruptcy ................................................................... 24
Our Rights To Recover Payment—Coverage X
    Family Liability Protection................................. 24
Suit Against Us ............................................................ 24

Other Insurance — Coverage X —
 Family Liability Protection............................24

*Section III — Optional Protection*

*Optional Coverages You May Buy*
Coverage BC
Building Codes ....................................................24
Coverage BP
Increased Coverage On Business Property..........24
Coverage DP
Increased Coverage On Electronic
 Data Processing Equipment.........................24
Coverage F
Fire Department Charges..................................24
Coverage G
Loss Assessments ...........................................25
Coverage J
Extended Coverage On Jewelry, Watches
 and Furs......................................................25
Coverage K
Incidental Office, Private School Or Studio..........26
Coverage LR
Lock Replacement ...........................................26
Coverage M
Increased Coverage On Money........................26
Coverage P
Business Pursuits .............................................26
Coverage S
Increased Coverage On Securities......................27
Coverage SD
Satellite Dish Antennas....................................27
Coverage SE
Cellular Communication Systems .....................27
Coverage ST
Increased Coverage On Theft Of Silverware..........27

## Definitions Used In This Policy

1. "You" or "your" — means the person named on the Policy Declarations as the insured and that person's resident spouse.

2. "Allstate," "we," "us," or "our" — means the company named on the Policy Declarations.

3. "Insured person(s)" — means you and, if a resident of your household:
   a) any relative; and
   b) any dependent person in your care.

Under **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection, "insured person"** also means:
c) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an insured person. We do not cover any person or organization using or having custody of animals or watercraft in any business, or without permission of the owner.
d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an insured person.

4. "Bodily injury" — means physical harm to the body, including sickness or disease, and resulting death, except that bodily injury does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

Under **Coverage Y — Guest Medical Protection**, bodily injury means physical harm to the body, including sickness or disease, except that bodily injury does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

5. "Building structure" — means a structure with walls and a roof.

6. "Business"—means:
   a) any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an insured person or relative of an insured person for economic gain is also a business.

   However, the mutual exchange of home day care services is not considered a business;
   b) any property rented or held for rental by an insured person. Rental of your residence premises is not considered a business when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to not more than two roomers or boarders; or
      3) a portion is rented as a private garage.

7. "Residence premises"—means the dwelling, other structures and land located at the address stated on the Policy Declarations.

8. "Insured premises"—means:
   a) the residence premises; and
   b) under Section II only:
      1) the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire for your use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an insured person but where an insured person is temporarily living;
      3) cemetery plots or burial vaults owned by an insured person;
      4) vacant land, other than farmland, owned by or rented to an insured person;
      5) land owned by or rented to an insured person where a one, two, three or four family dwelling is being built as that person's residence;
      6) any premises used by an insured person in connection with the residence premises;

   7) any part of a premises occasionally rented to an insured person for other than business purposes.

9. "Occurrence"—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

10. "Property damage"—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

11. "Residence employee"—means an employee of an insured person while performing duties arising out of and in the course of employment in connection with the maintenance or use of your residence premises. This includes similar duties performed elsewhere for an insured person, not in connection with the business of an insured person.

12. "Dwelling"—means a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

## Insuring Agreement

In reliance on the information you have given us, Allstate agrees to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in title, use or occupancy of the residence premises.

Subject to the terms of this policy, the Policy Declarations shows the location of the residence premises, applicable coverages, limits of liability and premiums. The policy applies only to losses or occurrences that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These

persons are defined as you or your. This means that the responsibilities, acts and omissions of a person defined as you or your will be binding upon any other person defined as you or your.

The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

### Agreements We Make With You
We make the following agreements with you:

### Conformity To State Statutes
When the policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes.

### Coverage Changes
When Allstate broadens coverage during the premium period without charge, you have the new features if you have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information you have given us. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly during the policy period.

Any calculation of your premium or changes in your coverage will be made using the rules, rates and forms on file, if required, for our use in your state. The rates in effect at the beginning of your current premium period will be used to calculate any change in your premium.

### Policy Transfer
You may not transfer this policy to another person without our written consent.

### Continued Coverage After Your Death
If you die, coverage will continue until the end of the premium period for:
1) your legal representative while acting as such, but only with respect to the residence premises

and property covered under this policy on the date of your death.
2) an insured person, and any person having proper temporary custody of your property until a legal representative is appointed and qualified.

### Cancellation
**Your Right to Cancel:**
You may cancel this policy by notifying us of the future date you wish to stop coverage.

**Our Right to Cancel:**
Allstate may cancel this policy by mailing notice to you at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with us, we may cancel this policy for any reason by giving you at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with us, we may cancel this policy for one or more of the following reasons:
1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
4) there has been a substantial change or increase in hazard in the risk we originally accepted.

If the cancellation is for non-payment of premium, we will give you at least 10 days notice. If the cancellation is for any of the other reasons, we will give you at least 30 days notice.

Our mailing the notice of cancellation to you will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. Your return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our Right Not to Renew or Continue:**
Allstate has the right not to renew or continue the policy beyond the current premium period. If we do not intend to continue or renew the policy, we will mail you notice at least 30 days before the end of the

PROP *810000404172157000923311*



premium period. Our mailing the notice of nonrenewal to you will be deemed proof of notice.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to you since there has been no coverage under this policy.

We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

## Section I — Your Property

### Coverage A
### Dwelling Protection

#### Property We Cover Under Coverage A:

1.  Your dwelling including attached structures. Structures connected to your dwelling by only a fence, utility line, or similar connection are not considered attached structures.

2.  Construction materials and supplies at the residence premises for use in connection with your dwelling.

3.  Wall-to-wall carpeting fastened to your dwelling.

#### Property We Do Not Cover Under Coverage A:

1.  Any structure including fences or other property covered under Coverage B — Other Structures Protection.

2.  Land, except as specifically provided in Section I — Additional Protection under item 12, "Land."

3.  Satellite dish antennas and their systems, whether or not attached to your dwelling.

### Coverage B
### Other Structures Protection

#### Property We Cover Under Coverage B:

1.  Structures at the address shown on the Policy Declarations separated from your dwelling by clear space.

2.  Structures attached to your dwelling by only a fence, utility line, or similar connection.

3.  Construction materials and supplies at the address of the residence premises for use in connection with structures other than your dwelling.

4.  Wall-to-wall carpeting fastened to other building structures.

#### Property We Do Not Cover Under Coverage B:

1.  Structures used in whole or in part for business purposes.

2.  Any structure or other property covered under Coverage A — Dwelling Protection.

3.  Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

4.  Construction materials and supplies at the address of the residence premises for use in connection with the dwelling.

5.  Satellite dish antennas and their systems, whether or not attached to building structures.

### Losses We Cover Under Coverages A and B:

We will cover sudden and accidental direct physical loss to property described in Coverage A — Dwelling Protection and Coverage B — Other Structures Protection except as limited or excluded in this policy.

## Losses We Do Not Cover Under Coverages A and B:

We do not cover loss to the property described in **Coverage A — Dwelling Protection or Coverage B — Other Structures Protection** consisting of or caused by:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises.**

   We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any building structure, other structure or land at the **residence premises.**

We do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss we cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person.**

9. Intentional or criminal acts of or at the direction of any **insured person,** if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

12. Collapse, except as specifically provided in **Section I — Additional Protection** under item 11, "Collapse."

13. Soil conditions, including but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

14. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

PRUP *610000404122157600963212*

In addition, we do not cover loss consisting of or caused by any of the following:

15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;

b) mechanical breakdown;

c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

d) rust or other corrosion, mold, wet or dry rot;

e) contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises;

f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;

g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

h) insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or

i) seizure by government authority.

If any of (a) through (h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within your dwelling, we cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the building structure is vacant, unoccupied or being constructed unless you have used reasonable care to:

a) maintain heat in the building structure; or

b) shut off the water supply and drain the system and appliances.

17. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:

a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or

b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft from your residence premises while your dwelling is under construction, or of materials and supplies for use in construction, until your dwelling is completed and occupied.

20. Vandalism or Malicious Mischief if your dwelling is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A dwelling under construction is not considered vacant or unoccupied.

21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

a) planning, zoning, development, surveying, siting;

b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c) materials used in repair, construction, renovation or remodeling; or

d) maintenance;

of property whether on or off the residence premises by any person or organization.

23. We do not cover loss to covered property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** when:

a) there are two or more causes of loss to the covered property; and

b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 22 above.

## Coverage C
## Personal Property Protection

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Coverage C—Personal Property Protection.** This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C—Personal Property Protection.** The total amount of coverage for each group in any one loss is as follows:

1. $ 200 — Money, bullion, bank notes, coins and other numismatic property.

2. $ 200 — Property used or intended for use in a business while the property is away from the **residence premises.** This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $1,000 — Property used or intended for use in a business, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises.** This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $1,000 — Trading cards, subject to a maximum amount of $250 per card.

5. $1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, and stamps, including philatelic property.

6. $1,000 — Manuscripts, including documents stored on electronic media.

7. $1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

8. $1,000 — Trailers not used with watercraft.

9. $1,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value.

10. $1,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $2,000 — Theft of firearms.

12. $2,500 — Theft of silverware, pewterware and goldware.

13. $5,000 — Electronic data processing equipment and the recording or storage media used with that



equipment whether or not the equipment is used in a business. Recording or storage media will be covered only up to:

a) the retail value of the media, if pre-programmed; or

b) the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. **$10,000** — Theft of rugs, including, but not limited to any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

## Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. We do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. We do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the insured premises and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders, tenants not related to an insured person.

6. Property located away from the residence premises and rented or held for rental to others.

7. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8. Satellite dish antennas and their systems.

## Losses We Cover Under Coverage C:

We will cover sudden and accidental direct physical loss to the property described in **Coverage C— Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

We do not cover:

a) loss to covered property inside a building structure, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;

b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building structure. However, we do cover canoes and rowboats on the residence premises.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

We do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

We do not cover vandalism or malicious mischief if your dwelling has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9. Falling objects.

We do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

We do not cover loss at the **residence premises** under perils (12), (13), and (14) caused by or resulting from freezing while the building

structure is vacant, unoccupied or under construction unless **you** have used reasonable care to:

a) maintain heat in the **building structure**; or
b) shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

We do not cover:
a) theft or attempted theft committed by an **insured person**;
b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;
e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

## Losses We Do Not Cover Under Coverage C:

We do not cover loss to the property described in Coverage C — **Personal Property Protection** caused by or consisting of:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

PRRJP *810000404172157000002314*

3.  Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.  Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

    We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5.  Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

    We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6.  Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**.

    We do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7.  The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover.

8.  Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9.  Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
    a)  may be reasonably expected to result from such acts; or
    b)  is the intended result of such acts.

    This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

12. War or warlike acts, including, but not limited to insurrection, rebellion or revolution.

13. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

14. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a)  planning, zoning, development, surveying, siting;
    b)  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c)  materials used in repair, construction, renovation or remodeling; or
    d)  maintenance;

    of property whether on or off the **residence premises** by any person or organization.

15. We do not cover loss to covered property described in **Coverage C — Personal Property Protection** when:
    a)  there are two or more causes of loss to the covered property; and

*Page 11*

b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 14 above.

## Additional Protection

1. **Additional Living Expense**
   a) We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover makes your **residence premises** uninhabitable.

   Payment for covered additional living expense will be limited to the least of the following:
   1) the time period required to repair or replace the property we cover, using due diligence and dispatch; or
   2) if you permanently relocate, the shortest time for your household to settle elsewhere;
   3) 12 months.

   b) We will pay your lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss we cover makes the part of the **residence premises** you rent to others, or hold for rental, uninhabitable. We will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.

   c) We will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril we insure against.

   These periods of time are not limited by the termination of this policy.

   We do not cover any lost income or expense due to the cancellation of a lease or agreement.

   No deductible applies to this protection.

2. **Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**
   We will pay for loss:
   a) that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person**;
   b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
   c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   Our maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

   We do not cover:
   a) loss arising from any **business** of an **insured person**;
   b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
   c) loss arising out of dishonesty of an **insured person**.

   When loss is discovered, the **insured person** must give us immediate written notice. If the loss involves a credit card, charge plate or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

   We will pay only for loss occurring during the policy period, including those losses discovered and reported to us within one year after the policy has terminated. We have the right to investigate and settle any claim or suit as we deem appropriate. Full payment of the amount of insurance for any one loss ends our obligation under each claim or suit arising from the loss.

   We will defend any suit brought against an **insured person** for the enforcement of payment

PRUP *S100000401721570009M2315*



covered under paragraph 2(a) of this protection. The defense will be at our expense, with counsel of our choice.

We have the option to defend an insured person or the insured person's bank against a suit for the enforcement of payment covered under paragraph 2(b) of this protection. The defense will be at our expense, with counsel of our choice.

No deductible applies to this protection.

3. **Debris Removal**
We will pay reasonable expenses you incur to remove debris of covered property damaged by a loss we cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, we will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
We will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss we cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
We will pay up to $500 for service charges made by fire departments called to protect your property from a loss we cover at the residence premises. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
We will reimburse you up to $5,000 for the reasonable and necessary cost you incur for temporary repairs to protect covered property from further imminent covered loss following a loss we cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
We will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Coverage A— Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the residence premises. We will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the residence premises, vandalism or malicious mischief, theft or collapse of a building structure or any part of a building structure.

We will pay up to $500 for reasonable expenses you incur for the removal of debris of trees at the address of the residence premises for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A— Dwelling Protection.**

We do not cover trees, shrubs, plants, or lawns grown for business purposes.

8. **Temperature Change**
We will pay for loss to covered personal property in a building structure at the residence premises resulting from a change in temperature. The change in temperature must result from a covered loss to the building structure.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
We will pay for loss to the contents of freezers and refrigerated units on the residence premises caused by the interruption of power which occurs off the residence premises. If a power interruption is known to an insured person, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Arson Reward**

We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

11. **Collapse**

We will cover:
a) the entire collapse of a covered building structure;
b) the entire collapse of part of a covered building structure; and
c) direct physical loss to covered property caused by (a) or (b) above.

For coverage to apply, the collapse of a building structure specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss we cover under **Section I, Coverage C — Personal Property Protection;**
b) hidden decay of the building structure;
c) hidden damage to the building structure caused by insects or vermin;
d) weight of persons, animals, equipment or contents;
e) weight of rain or snow which collects on a roof;
f) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

12. **Land**

If a sudden and accidental direct physical loss results in both a covered loss to the dwelling, other than the breakage of glass or safety glazing material, and a loss of land stability, we will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land

necessary to support that part of the dwelling sustaining the covered loss.

The **Section I — Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

## Section I Conditions

1. **Deductible**

We will pay when a covered loss exceeds the deductible shown on the Policy Declarations. We will then pay only the excess amount, unless we have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**

In the event of a covered loss, we will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**

In the event of a loss to any property that may be covered by this policy, you must:
a) promptly give **us** or our agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.
b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
c) separate damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
d) give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies.
e) produce receipts for any increased costs to maintain **your** standard of living while you reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as we reasonably require:
   1) show us the damaged property.
   2) at our request, submit to examinations under oath, separately and apart from any other person defined as you or insured person and sign a transcript of the same.
   3) produce representatives, employees, members of the insured's household or others to the extent it is within the insured person's power to do so; and

g) within 60 days after the loss, give us a signed, sworn proof of the loss. This statement must include the following information:
   1) the date, time, location and cause of loss;
   2) the interest insured persons and others have in the property, including any encumbrances;
   3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
   4) any other insurance that may cover the loss;
   5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
   6) at our request, the specifications of any damaged building structure or other structure;
   7) evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

4. **Our Settlement Options**
   In the event of a covered loss, we have the option to:
   a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
   b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

Within 30 days after we receive your signed, sworn proof of loss  we will notify you of the option or options we intend to exercise.

5. **How We Pay For A Loss**
   Under **Coverage A — Dwelling Protection**, **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
   a) Special Payment. At our option, we may make payment for a covered loss before you repair, rebuild or replace the damaged, destroyed or stolen property if:
      1) the whole amount of loss for property covered under **Coverage A — Dwelling Protection and Coverage B — Other Structures Protection**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;
      2) the whole amount of loss for property covered under **Coverage C — Personal Property Protection** without deduction for depreciation, is less than $2,500 and if your Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

   b) Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

   You may make claim for additional payment as described in paragraph "c", and paragraph "d" below if applicable, if you repair or replace the damaged, destroyed or

stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a building structure damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the building structure(s) for equivalent construction for similar use on the same premises;
2) the amount actually and necessarily spent to repair or replace the damaged building structure(s) with equivalent construction for similar use on the same residence premises; or
3) the limit of liability applicable to the building structure(s) as shown on the Policy Declarations for Coverage A — Dwelling Protection or Coverage B — Other Structures Protection, regardless of the number of building structures and structures other than building structures involved in the loss.

If you replace the damaged building structure(s) at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement

described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to building structures and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under Coverage C — Personal Property Protection;
2) property covered under Coverage B — Other Structures Protection that is not a building structure;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a building structure; or
4) land.

Payment under "a", "b", or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of building structures or other structures.

d) Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under Coverage C — Personal Property Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for Coverage C —

HHOP *61000040412215700096231/*

Personal Property Protection, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:

1) property insured under **Coverage A— Dwelling Protection and Coverage B —Other Structures Protection**, except wall-to-wall carpeting;

2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced.

3) articles whose age or history contribute substantially to their value. This includes, but is not limited to memorabilia, souvenirs and collector's items; or

4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

6. **Our Settlement Of Loss**
We will settle any covered loss with **you** unless another payee is named in the policy. We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

7. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where

the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.

b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

Page 17

We will notify you of our intent to exercise this option within 30 days after we receive your signed, sworn proof of loss.

When we settle any loss caused by theft or disappearance, we have the right to obtain all or part of any property which may be recovered. An insured person must protect this right and inform us of any property recovered. We will inform you of our intent to exercise this right within 10 days of your notice of recovery to us.

12. **Suit Against Us**
No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, we may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
This insurance will not benefit any person or organization who may be caring for or handling your property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment condition applies:

The limit of liability shown on the Policy Declarations for **Coverage A—Dwelling Protection** will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

The limit of liability for **Coverage A—Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for **Coverage A — Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B —Other Structures Protection** and **Coverage C —Personal Property Protection** in accordance with the **Allstate** manual of Rules and Rates.

We will not reduce the limit of liability shown on the Policy Declarations without your consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by Allstate at the time a change in limits is made.

**Allstate** has the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving you at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by **Allstate in your state**.

18. **Mortgagee**
A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of Section I of this policy apply to these mortgagees.

We will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve

PROP. *61K00064041/2715/000063318*

property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and

b) give the mortgagee at least 10 days notice if we cancel this policy.

The mortgagee will:

a) furnish proof of loss within 60 days after notice of the loss if an insured person fails to do so;

b) pay upon demand any premium due if an insured person fails to do so;

c) notify us in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

d) give us the mortgagee's right of recovery against any party liable for loss; and

e) after a loss, and at our option, permit us to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

# Section II — Family Liability and Guest Medical Protection

## Coverage X
### Family Liability Protection

#### Losses We Cover Under Coverage X:

Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

### Losses We Do Not Cover Under Coverage X:

1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:

   a) such insured person lacks the mental capacity to govern his or her conduct;

   b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or

   c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

2. We do not cover bodily injury to an insured person or property damage to property owned by an insured person whenever any benefit of this coverage would accrue directly or indirectly to an insured person.

3. We do not cover bodily injury to any person eligible to receive benefits required to be provided or voluntarily provided by an insured person under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

   a) a motor vehicle in dead storage or used exclusively on an insured premises;

   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured premises;

c) a motorized wheel chair;
d) a vehicle used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration;
e) a golf cart owned by an insured person when used for golfing purposes;
f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
g) lawn and garden implements under 40 horsepower;
h) bodily injury to a residence employee.

6. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an insured premises if the watercraft:
a) has inboard or inboard-outboard motor power of more than 50 horsepower;
b) is a sailing vessel 26 feet or more in length;
c) is powered by one or more outboard motors with more than 25 total horsepower;
d) is designated as an airboat, air cushion, or similar type of watercraft; or
e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to bodily injury to a residence employee.

7. We do not cover bodily injury or property damage arising out of:
a) the negligent supervision by an insured person of any person; or
b) any liability statutorily imposed on any insured person

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under Section II of this policy.

8. We do not cover any bodily injury which results in any manner from the discharge, dispersal,

release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

We do cover bodily injury which results from such discharge if the discharge is sudden and accidental.

9. We do not cover any property damage consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. We do not cover any bodily injury or property damage arising out of any liability statutorily imposed upon any insured person in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. We do not cover bodily injury or property damage arising out of the rendering of, or failure to render, professional services by an insured person.

12. We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person.

We do cover the occasional or part-time business activities of an insured person who is a student under 21 years of age.

13. We do not cover bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by an insured person. This exclusion does not apply to bodily injury to a residence employee.

14. We do not cover property damage to property rented to, occupied or used by, or in the care of, an insured person. This exclusion does not apply if the property damage is caused by fire, explosion or smoke.



15. We do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. We do not cover **bodily injury** or property damage caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

### Coverage Y
### Guest Medical Protection

### Losses We Cover Under Coverage Y:

Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an occurrence causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:

1. We do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or

   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.
   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. We do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3. We do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6.  **We** do not cover bodily injury arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
    a)  has inboard or inboard-outboard motor power of more than 50 horsepower;
    b)  is a sailing vessel 26 feet or more in length;
    c)  is powered by one or more outboard motors with more than 25 total horsepower;
    d)  is designated as an airboat, air cushion, or similar type of watercraft; or
    e)  is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to bodily injury to a **residence employee**.

7.  **We** do not cover bodily injury arising out of:
    a)  the negligent supervision by any **insured person** of any person; or
    b)  any liability statutorily imposed on any **insured person**

    arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under Section II of this policy.

8.  **We** do not cover any bodily injury which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

    **We** do cover bodily injury which results from such discharge if the discharge is sudden and accidental.

9.  **We** do not cover bodily injury arising out of the rendering of, or failure to render professional services by, an **insured person**.

10. **We** do not cover bodily injury arising out of the past or present business activities of an **insured person**.

    **We** do cover the occasional or part-time business activities of an **insured person** who is a student under 21 years of age.

11. **We** do not cover bodily injury to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover bodily injury arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to bodily injury to a **residence employee**.

13. **We** do not cover bodily injury caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

## *Additional Protection*

**We** will pay, in addition to the limits of liability:
1.  **Claim Expense**
    **We** will pay:
    a)  all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
    b)  interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
    c)  premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
    d)  up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
    e)  any other reasonable expenses incurred by an **insured person** at **our** request.

PHOP  *6100004041221b/0009963220*

2. **Emergency First Aid**
   We will pay reasonable expenses incurred by an insured person for first aid to other persons at the time of an accident involving bodily injury covered under this policy.

3. **Damage To Property Of Others**
   At your request, we will pay up to $500 each time an insured person causes property damage to someone else's property. At our option, we will pay the cost to either repair or replace the property damaged by an insured person, without deduction for depreciation.

   We will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an insured person who has attained the age of 13;
   c) to property owned by or rented to an insured person, any tenant of an insured person, or any resident in your household; or
   d) arising out of:
      1) past or present **business** activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## Section II Conditions

1. **What You Must Do After An Accidental Loss**
   In the event of bodily injury or property damage, you must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) your name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.

   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an insured person will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an insured person;
      3) attend any hearing or trial.
   d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an insured person must be prepared to show **us** any damaged property under that person's control.

   Any insured person will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do — Coverage Y — Guest Medical Protection**
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give **us** written proof of the loss. If we request, this must be done under oath.
   b) Give **us** written authorization to obtain copies of all medical records and reports.
   c) Permit doctors we select to examine the injured person as often as we may reasonably require.

3. **Our Payment Of Loss — Coverage Y — Guest Medical Protection**
   We may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by us or an insured person.

4. **Our Limits Of Liability**
   Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under **Coverage X — Family Liability Protection** for damages resulting from one occurrence will not exceed the limit shown on the Policy Declarations. All bodily injury and property damage resulting

from continuous or repeated exposure to the same general conditions is considered the result of one occurrence.

Our total liability under **Coverage Y — Guest Medical Protection** for all medical expenses payable for bodily injury, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
   We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured person.

6. **Our Rights to Recover Payment — Coverage X — Family Liability Protection**
   When we pay any loss, an insured person's right to recover from anyone else becomes ours up to the amount we have paid. An insured person must protect these rights and help us enforce them.

7. **Suit Against Us**
   a) No suit or action can be brought against us unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against us under **Coverage X — Family Liability Protection** until the obligation of an insured person to pay is finally determined either by judgment against the insured person after actual trial, or by written agreement of the insured person, injured person, and us.
   c) No one shall have any right to make us a party to a suit to determine the liability of an insured person.

8. **Other Insurance — Coverage X — Family Liability Protection**
   This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## Section III — Optional Protection

### Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BC**
   **Building Codes**
   We will pay up to 10% of the amount of insurance on the Policy Declarations under **Coverage A — Dwelling Protection** to comply with local building codes after covered loss to dwelling or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the dwelling.

2. **Coverage BP**
   **Increased Coverage On Business Property**
   The $1,000 limitation on business property located on the residence premises, under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the residence premises.

3. **Coverage DP**
   **Increased Coverage On Electronic Data Processing Equipment**
   The $5,000 limitation on electronic data processing equipment under **Coverage C — Personal Property Protection**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

4. **Coverage F**
   **Fire Department Charges**
   The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.



5. **Coverage G**
   **Loss Assessments**

If your residence premises includes a building structure which is constructed in common with one or more similar buildings, and you are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the insured premises means the building structure occupied exclusively by your household as a private residence, including the grounds, related structures and private approaches to them.

We will pay your share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:

a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss we cover under **Section I** of this policy; or

b) bodily injury or property damage covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for bodily injury or property damage exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to Sections I and II of this policy and the Section I and II Conditions, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

6. **Coverage J**
   **Extended Coverage On Jewelry, Watches and Furs**

Coverage C — Personal Property Protection is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:

a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and

b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to Coverage C — Personal Property Protection. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

We do not cover loss caused by or consisting of:

a) intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:

   1) may be reasonably expected to result from such acts; or

   2) is the intended result of such acts.

b) wear and tear, gradual deterioration, inherent vice, insects or vermin;

c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke.

   We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

d) war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

e) failure by any insured person to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss we cover.

Any deductible shown on the Policy Declarations applicable to **Coverage C — Personal Property**

Protection, also applies to a loss under this coverage.

7. **Coverage K**
   **Incidental Office, Private School Or Studio**
   a) The $200 and $1,000 limits applying to property used or intended for use in a business under **Coverage C — Personal Property Protection** do not apply to equipment, supplies and furnishings used in a described office, private school or studio at your residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

   The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the residence premises. The second limit applies to property while away from the residence premises. These limits are not in addition to **Coverage C — Personal Property Protection, Limitations On Certain Personal Property** on property used or intended for use in a business. The increased coverage does not include property held for sample, sale or delivery after sale.

   b) **Coverage X — Family Liability Protection and Coverage Y — Guest Medical Protection** are extended to cover a described office, private school or studio occupied by an **insured person**. The occupancy of the described property shall not be considered a **business**.

   We do not cover bodily injury to:
   a) any employee other than a **residence employee**; or
   b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.

8. **Coverage LR**
   **Lock Replacement**
   **Coverage A — Dwelling Protection** is extended to include reasonable expenses you incur to replace or re-key exterior door locks at the residence premises with locks or cylinders of like kind and quality. Coverage is provided when

a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $250.

9. **Coverage M**
   **Increased Coverage On Money**
   The $200 limitation on money, bullion, bank notes, coins and other numismatic property under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

10. **Coverage P**
    **Business Pursuits**
    **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover specified **business** pursuits of an **insured person**.

    We do not cover:
    a) **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person**. This also means a partnership or joint venture of which an **insured person** is a partner or member;
    b) **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;
    c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
    d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or
    e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

Page 26

11. **Coverage S**
Increased Coverage On Securities
The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, or stamps, including philatelic property, covered under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations.

12. **Coverage SD**
Satellite Dish Antennas
**Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on your residence premises, subject to the provisions of **Coverage C — Personal Property Protection**.

The amount of coverage is shown on the Policy Declarations.

13. **Coverage SE**
Portable Cellular Communication Systems
**Coverage C — Personal Property Protection** is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft. Coverage applies whether or not the portable cellular communication system is used in a business.

The amount of coverage is shown on the Policy Declarations.

14. **Coverage ST**
Increased Coverage On Theft Of Silverware
The $2,500 limitation on theft of silverware, pewterware and goldware under **Coverage C — Personal Property Protection** is increased to the amount shown on the Policy Declarations.

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of Allstate.

*[signature]*

Secretary

*[signature]*

President
Allstate Personal Property & Casualty Company

**ALLSTATE INSURANCE COMPANY**
**HUDSON EXPRESS**
PO BOX 167645
IRVING, TX 75016

(888) 311-3985

**CES®**
**Contents Estimating System**

**PERSONAL PROPERTY DAMAGE ESTIMATE**
**WORKING COPY**

## CLAIM SUMMARY

| | |
|---|---|
| Claim Number | : 0127285310 |
| Type of Loss | : Fire (Hostile) |
| Date of Loss | : January 04, 2009 |
| Policy Type | : Deluxe Homeowners - Primary residence |
| Customer | : AUSTREBERTO DE LA TORRE |
| Contact Information | : Other Phone    : (626) 437-3883 |
| Claim Representative | : NEXTGEN NEXTGEN |

## ESTIMATE SUMMARY

| | | TOTAL | TOTAL w/Applied Limit |
|---|---|---|---|
| Total FRC Inventory | : $ | 8,039.68 | $ 8,039.68 |
| Total Depreciation | : - $ | 4,143.24 | $ 4,143.24 |
| Total Fix \ Clean \ Allowance Inventory | : + $ | 600.00 | $ 600.00 |
| Total Estimate Value | : $ | 4,496.44 | $ 4,496.44 |
| Subtotal | : $ | 4,496.44 | $ 4,496.44 |
| Total Recovered Depreciation | : + $ | 4,496.44 | $ 4,496.44 |
| Less Deductible | : - $ | 0.00 | $ 0.00 |
| Total | : $ | 4,496.44 | $ 4,496.44 |
| Total Loss and Damage Payable (with deductible applied) | : $ | 4,496.44 | |
| Total Prior Payments | : - $ | 0.00 | |
| Amount Payable | : $ | 4,496.44 | |
| Balance of Recoverable Depreciation | : $ | 4,143.24 | |

## COMMENTS

This estimate may include items with pricing from Internet sources. In some cases shipping charges may not be included because they are not known until a purchase is made. If you replace the damaged, destroyed or stolen property from one of these sources and shipping charges are incurred, you may make a claim for these additional charges. Should this occur, please contact your claim adjuster at the number listed above and submit a receipt for the shipping charges.

## COMMENTS (continued)

For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.



Content Damage Estimate for Claim #0127285310-01-00 - 5/5/2009 - 8:09:18 AM

## CATEGORY DETAILS

| Category | Replacement Inventory | | | | | Fixt/Clean\Allowance Inventory | | Category Totals |
|---|---|---|---|---|---|---|---|---|
| | Estimate Value | Sales Tax | Depreciation | Other Fees | Actual Cash Value | Estimate Value | Estimate Tax | |
| [016] Furniture-Upholstered | 1,916.00 | 177.23 | 981.40 | 0.00 | 1,111.83 | 0.00 | 0.00 | 1,111.83 |
| [033] Sports & Recreation | 2,499.00 | 231.16 | 1,528.89 | 0.00 | 1,201.27 | 0.00 | 0.00 | 1,201.27 |
| [023] Linens and Bedding | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 600.00 | 0.00 | 600.00 |
| [042] TV/Video & Accessories | 2,438.97 | 225.61 | 1,268.73 | 0.00 | 1,395.85 | 0.00 | 0.00 | 1,395.85 |
| [047] Electronic Apparatus - NC | 99.00 | 9.18 | 14.08 | 0.00 | 94.10 | 0.00 | 0.00 | 94.10 |
| [039] Toys/Games | 149.00 | 13.78 | 146.50 | 0.00 | 16.28 | 0.00 | 0.00 | 16.28 |
| [002] Appliances-Small Electrical | 257.00 | 23.77 | 203.66 | 0.00 | 77.11 | 0.00 | 0.00 | 77.11 |
| Total | 7,358.97 | 680.71 | 4,143.24 | 0.00 | 3,896.44 | 600.00 | 0.00 | 4,496.44 |

## INVENTORY DETAILS

### GENERAL

| # | Description | Cat. | Qty | Age | Orig. Cost | Unit Cost | Total Cost | Est. Tax | Total Depr. | Other Fees | Total ACV | FRC Total (Incl. tax) | Recovered Depreciation | Depr. Reim. Complete |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Queen Mattress  Comment: furniture factory in Rosemead  Replacement: from http://search.msn.com/product | | | | | | | | | | | | | |
| | | [016] | 1 | 4y0m | 600.00 | 597.00 | 597.00 | 55.22 | 260.89 | 0.00 | 391.33 | 0.00 | 0.00 | |
| 2 | Ceragem Master Massage Bed # CGM-M3500  Replacement: model #Therasage Aut from http://www.amazon.com/dp/B000 | | | | | | | | | | | | | |
| | | [033] | 1 | 4y0m | 3,000.00 | 2,499.00 | 2,499.00 | 231.16 | 1,528.89 | 0.00 | 1,201.27 | 0.00 | 0.00 | |
| 3 | Sofa / Love Seat  Comment: factory in Rosemead  Replacement: from http://www.overstock.com/Home | | | | | | | | | | | | | |
| | | [016] | 1 | 5y0m | 1,200.00 | 1,319.00 | 1,319.00 | 122.01 | 720.51 | 0.00 | 720.50 | 0.00 | 0.00 | |
| 4 | 65" Samsung Tv m# HL-P6163W s/n # 39963CFX800076N mnf 2004  Replacement: from http://www.nextag.com/Mitsubi | | | | | | | | | | | | | |
| | | [042] | 1 | 4y0m | 3,200.00 | 1,999.00 | 1,999.00 | 184.91 | 960.92 | 0.00 | 1,222.99 | 0.00 | 0.00 | |
| 5 | Sony Dvd Player m# DVP-NS72HP S/N # 80136747  Replacement: from http://www.amazon.com/s/?ie=U | | | | | | | | | | | | | |
| | | [042] | 1 | 2y0m | 240.00 | 167.97 | 167.97 | 15.54 | 40.37 | 0.00 | 143.14 | 0.00 | 0.00 | |
| 6 | Sony 20" Tv m# KV20v50 S/N# 80136747  Replacement: from http://www.amazon.co.uk/Sony- | | | | | | | | | | | | | |
| | | [042] | 1 | 10y0m | 650.00 | 272.00 | 272.00 | 25.16 | 267.44 | 0.00 | 29.72 | 0.00 | 0.00 | |
| 7 | Gateway Internet Router m# 2701HG-B s/n 170611089073 | | | | | | | | | | | | | |
| | | [047] | 1 | 1y0m | 108.00 | 99.00 | 99.00 | 9.16 | 14.06 | 0.00 | 94.10 | 0.00 | 0.00 | |
| 8 | Nitendo Gamecube  Replacement: from http://cube.ign.com/articles/ | | | | | | | | | | | | | |
| | | [039] | 1 | 5y0m | 200.00 | 149.00 | 149.00 | 13.78 | 146.50 | 0.00 | 16.28 | 0.00 | 0.00 | |
| 9 | Hoover Vacuum  Replacement: from target.com | | | | | | | | | | | | | |
| | | [002] | 1 | 6y0m | 160.00 | 149.00 | 149.00 | 13.78 | 126.97 | 0.00 | 35.81 | 0.00 | 0.00 | |
| 10 | House Phone System  Replacement: from staples.com | | | | | | | | | | | | | |
| | | [002] | 1 | 5y0m | 120.00 | 108.00 | 108.00 | 9.99 | 76.69 | 0.00 | 41.30 | 0.00 | 0.00 | |
| Inventory Totals | 10 | | | | | | 7,358.97 | 680.71 | 4,143.24 | 0.00 | 3,896.44 | 0.00 | 0.00 | |

# FIX\CLEAN\ALLOWANCE INVENTORY DETAILS

### GENERAL

| # | Description | Action | Cat. | Orig. Cost | Total Hours | Rate | Estimate Value | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Material Cost | Total Allowance | Tax | Est. Total |
| 1 | Assorted Blankets / Sheets | Allowance | [023] | | | | | | 0.00 | 600.00 |
| | Fix \ Clean \ Allowance Inventory Totals | | | | | | 0.00 | 0.00 | 0.00 | 600.00 |



CCW-311

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address)*:<br>PARISI & HAVENS LLP<br>David C. Parisi, Esq. (SBN 162248); Suzanne Havens Beckman, Esq. (SBN 188814)<br>15233 Valleyheart Drive<br>Sherman Oaks, California 91403<br>TELEPHONE NO.: (818) 990-1299 FAX NO. *(Optional)*: (818) 501-7852<br>E-MAIL ADDRESS *(Optional)*: dparisi@parisihavens.com; shavens@parisihavens.com<br>ATTORNEY FOR *(Name)*: Plaintiff | **POS-010**<br>FOR COURT USE ONLY<br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 0 4 2009<br><br>John A. Clarke, Executive Officer/ Clerk<br>By _____, Deputy<br>C. PIEDRA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: CENTRAL DISTRICT

REC'D AUG 0 4 2009 FILING WINDOW

PLAINTIFF/PETITIONER: AUSTREBERTO DE LA TORRE, an individual,

DEFENDANT/RESPONDENT: ALLSTATE INSURANCE COMPANY, a corpora

| CASE NUMBER |
|---|
| BC418575 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.<br>654651 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents)*: Notice of Case Assignment - Unlimited Civil Case

3. a. Party served *(specify name of party as shown on documents served)*:
   Allstate Insurance Company, a corporation

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   CT Corporation, Agent for service of processs by serving Margaret Wilson, Sr. Process Specialist

4. Address where the party was served:
   818 West Seventh Street, Second Floor, Los Angeles, California 90017

5. I served the party (check proper box)
   a. ☑ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 07/30/2009 (2) at *(time)*: 9:40 a.m.
   b. ☐ by substituted service. On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or ☐ a declaration of mailing is attached.
      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Page 1 of 2<br>Code of Civil Procedure, § 417.10<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

| PLAINTIFF/PETITIONER: AUSTREBERTO DE LA TORRE, an individual, | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: ALLSTATE INSURANCE COMPANY, a corpora | BC418575 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date)*:                                        (2) from *(city)*:

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☑ On behalf of *(specify)*:  Allstate Insurance Company, a corporation
      under the following Code of Civil Procedure section:

   ☑ 416.10 (corporation)                    ☐ 415.95 (business organization, form unknown)
   ☐ 416.20 (defunct corporation)            ☐ 416.60 (minor)
   ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
   ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
   ☐ 416.50 (public entity)                  ☐ 415.46 (occupant)
                                             ☐ other:

7. **Person who served papers**
   a. Name: Cecilio Martinez, Ace Messenger & Attorney Service, Inc.
   b. Address: 811 Wilshire Boulevard, Suite 900, Los Angeles, California 90017
   c. Telephone number: (213) 623-3979
   d. The fee for service was: $
   e. I am:
      (1) ☐ not a registered California process server.
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☑ a registered California process server:
          (i) ☐ owner ☑ employee ☐ independent contractor.
          (ii) Registration No.: 6243
          (iii) County: LOS ANGELES

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: July 30, 2009

CECILIO MARTINEZ
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                          ▶                                      (SIGNATURE)

POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
David C. Parisi (162248)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
TELEPHONE NO. (818) 990-1299   FAX NO. (818) 501-7852
ATTORNEY FOR (Name) Austreberto De La Torre

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90189
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
De La Torre v. Allstate Ins. Co., et al.

**FOR COURT USE ONLY**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
JUL 24 2009
John A. Clarke, Executive Officer/Clerk
By_____, Deputy
RUGENA LOPEZ

CASE NUMBER: **BC418575**

JUDGE:

DEPT:

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[✓] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action (specify): 5: 1) breach of contract; 2) Bad faith; 3) Dec Rel.; 4) UCL; 5) Unjust enrich.
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 24, 2009
David C. Parisi
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2
Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**    CM-010

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

To Parties in Rule 3.740 Collections Cases. A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

To Parties in Complex Cases. In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

| SHORT TITLE: De La Torre v. Allstate Ins. Co., et al. | CASE NUMBER BC418575 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL ? ____ ☐ HOURS/ ☑ DAYS

**Item II.** Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | Type of Action<br>B<br>(Check only one) | | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | | |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | | 1., 2., 4. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | | 2. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | | 1., 2., 3., 4., 6. |
| | | ☐ A7240  Other Professional Health Care Malpractice | | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | | 1., 2., 4. |
| Business Tort/Property Damage/Wrongful Death Tort | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | | ①, 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | | 1., 2., 3. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

SHORT TITLE:
De La Torre v. Allstate Ins. Co., et al.

CASE NUMBER

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons -See Step 3 Above |
|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort (Cont'd.)** | | |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1., 2., 3. |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | |
| **Contract** | | |
| Breach of Contract/Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 1., 2., 3. |
| | ☐ A6008  Contract/Warranty Breach –Seller Plaintiff (no fraud/negligence) | 10. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5. |
| | | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 1., 2., 5. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 2., 5. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 5., 8. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5. |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation    Number of parcels_____ | 1., 2., 3., 8. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

SHORT TITLE:
De La Torre v. Allstate Ins. Co., et al.

CASE NUMBER

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| **Judicial Review (Cont'd.)** | | |
| Writ of Mandate<br>(02) | ☐ A6151   Writ - Administrative Mandamus<br>☐ A6152   Writ - Mandamus on Limited Court Case Matter<br>☐ A6153   Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2. |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 2., 8. |
| Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 8. |
| Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 3. |
| Securities Litigation (28) | ☐ A8035   Securities Litigation Case | 1., 2., 8. |
| Toxic Tort<br>Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 8. |
| Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 3., 8.<br><br>1., 2., 5., 8. |
| **Enforcement of Judgment** | | |
| Enforcement<br>of Judgment<br>(20) | ☐ A6141   Sister State Judgment<br>☐ A6160   Abstract of Judgment<br>☐ A6107   Confession of Judgment (non-domestic relations)<br>☐ A6140   Administrative Agency Award (not unpaid taxes)<br>☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112   Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8. |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030   Declaratory Relief Only<br>☐ A6040   Injunctive Relief Only (not domestic/harassment)<br>☐ A6011   Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8. |
| Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 1., 2., 8. |
| Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123   Workplace Harassment<br>☐ A6124   Elder/Dependent Adult Abuse Case<br>☐ A6190   Election Contest<br>☐ A6110   Petition for Change of Name<br>☐ A6170   Petition for Relief from Late Claim Law<br>☐ A6100   Other Civil Petition | 2., 8.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: De La Torre v. Allstate Ins. Co., et al. | CASE NUMBER |
|---|---|

Item III. *Statement of Location*: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 539 E. Orange Grove Blvd. |
|---|---|
| CITY: Pasadena | STATE: CA | ZIP CODE: 91104 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: July 24, 2009

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

### PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/10/09

HONORABLE CARL J. WEST      JUDGE   E. SABALBURO     DEPT. 311

HONORABLE                   JUDGE PRO TEM                DEPUTY CLERK

    NONE                    Deputy Sheriff   NONE         ELECTRONIC RECORDING MONITOR

8:30 am | BC418575                                Reporter

AUSTREBERTO DE LA TORRE     Plaintiff Counsel

VS                            NO APPEARANCES

ALLSTATE INSURANCE COMPANY    Defendant Counsel

DEEMED COMPLEX (08-10-09)

**NATURE OF PROCEEDINGS:**

COURT ORDER

This Court makes it determination whether or not this case should be deemed complex pursuant to Rule 3.400 of the California Rules of Court.

This case is designated complex and is reassigned to Judge Carl J. West in Department 311 at the Central Civil West Courthouse for all further proceedings and for all purposes.

The case is ordered stayed until the initial status conference date. Notice of Initial Status Conference is to be given by the Clerk in Department 311. No responsive pleadings may be filed. Parties may file a Notice of Appearance in lieu of an answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a general appearance and shall not waive any substantive or procedural challenge to the complaint. Nothing herein stays the time for filing affidavit of prejudice pursuant to Code of Civil Procedure section 170.6.

Pursuant to Government Code section 70616 (c), each party is ordered to pay $550.00 for complex fees, payable to Los Angeles Superior Court, within ten (10) calendar days from this date.

Plaintiff is ordered to serve a copy of this minute order on all parties forthwith and file a proof of

Page   1 of   3    DEPT. 311

MINUTES ENTERED
08/10/09
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/10/09

HONORABLE CARL J. WEST | JUDGE | E. SABALBURO | DEPT. 311 | DEPUTY CLERK

HONORABLE | JUDGE PRO TEM | | | ELECTRONIC RECORDING MONIT

NONE | Deputy Sheriff | NONE | | Reporter

8:30 am  BC418575

AUSTREBERTO DE LA TORRE | Plaintiff Counsel
VS | | NO APPEARANCES
ALLSTATE INSURANCE COMPANY | Defendant Counsel

DEEMED COMPLEX (08-10-09)

## NATURE OF PROCEEDINGS:

service in the assigned department within seven (7) days of service.

Any party objecting to the complex designation must file an objection and proof of service in Department 311 within ten (10) days of service of this minute order. Any response to the objection must be filed in Department 311 within seven (7) days of service of the objection. This Court will make its ruling on the submitted pleadings.

### CLERK'S CERTIFICATE OF MAILING/ NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served Notice of Entry of the above minute order of 08-10-09 upon each party or counsel named below by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original entered herein in a separate sealed envelope for each, addressed as shown below with the postage thereon fully prepaid.

Date: 08-10-09

John A. Clarke, Executive Officer/Clerk

By: _____

Page    2 of    3    DEPT. 311

MINUTES ENTERED
08/10/09
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/10/09

HONORABLE CARL J. WEST      JUDGE   E. SABALBURO      DEPT. 311

HONORABLE      JUDGE PRO TEM      DEPUTY CLERK

NONE      Deputy Sheriff   NONE      ELECTRONIC RECORDING MONIT

                                              Reporter

8:30 am   BC418575

AUSTREBERTO DE LA TORRE      Plaintiff Counsel
VS
ALLSTATE INSURANCE COMPANY      NO APPEARANCES
                                   Defendant Counsel

DEEMED COMPLEX (08-10-09)

**NATURE OF PROCEEDINGS:**

     K. HILAIRE

PARISI & HAVENS, LLP
David C. Parisi, Esq.
15233 Valleyheart Drive
Sherman Oaks, California   91403

Page   3 of   3      DEPT. 311

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge J. Spencer Letts and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV09- 6346 JSL (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

The United States District Judge assigned to this case will review all filed discovery motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery related motions to the Magistrate Judge for hearing and determination

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Austreberto De La Torre

**DEFENDANTS**

Allstate Insurance Company

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

See Attachment

Attorneys (If Known)

See Attachment

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No  ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332(d)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R.& Truck | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 445 American with Disabilities – Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: CV09-6346

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
  ☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| On information and belief, Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
  ☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| On information and belief, Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _~Eric R. McDonough~_   Date  August 31, 2009

  Eric R. McDonough

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

## Attachment to Civil Case Cover Sheet

**Attorneys for Plaintiff Austreberto De La Torre:**

David C. Parisi
Suzanne Havens Beckman
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818)990-1299

Alan Himmelfarb
KAMBEREDELSON, LLC
2757 Leonis Blvd.
Los Angeles, California 90058
(823( 585-8696

**Attorneys for Defendant Allstate Insurance Company:**

Eric R. McDonough
Carolyn E. Sieve
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
(310) 277-7200

Daniel M. Blouin (pro hac vice application pending)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5966

Kendra Kekelis Hartman (pro hac vice application pending)
SONNENSCHEIN NATH & ROSENTHAL LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
(312) 876-8006